IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EVELYN CLARK, on behalf of herself and all others similarly situated, ) ) ) | |
| Plaintiff, ) ) ) | No. 03 C 7882 |
| v. ) ) | |
| EXPERIAN INFORMATION SOLUTIONS INC., and CONSUMERINFO.COM ) ) ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

Before this court is Defendants' Experian Information Solutions Inc. and Consumerinfo.com Renewed Motion For Summary Judgment On Counts One Through Three Of Plaintiff's Amended Complaint filed on February 14, 2005. In short, this dispute arises out of plaintiff Evelyn Clark's ("Clark") allegation that defendants "engaged in an unfair and deceptive act and practice by luring customers onto their website with promises of a 'free' credit report" or a "Three Bureau Credit Report" for the price of $ 24.95, "which results in consumers unknowingly enrolling in and being charged $79.95 for [d]efendants' CreditCheck monitoring services." (Am. Compl. ¶ 2.)

Defendants' motion requests summary judgment on Counts One through Three of Clark's Amended Complaint. These first three counts alleged causes of action based on California consumer-protection statutes. Defendants' position, advanced in the instant motion, is that these California consumer-protection statutes cannot apply under Illinois choice-of-law principles. Defendants first motion for summary judgment was denied without prejudice to allow Clark more time for discovery,

1

which she argued was necessary to allow her to properly respond to the motion for summary judgment.[1] For the following reasons, defendants' Renewed Motion For Summary Judgment On Counts One Through Three Of Plaintiff's Amended Complaint is granted.

## BACKGROUND

The following are the relevant undisputed facts gleaned from the parties submissions. Clark is a resident of Illinois. (Pl.'s 56.1(b)(3)(A) Resp. ¶ 1.) Defendant Consumerinfo.com ("Consumerinfo") is a California corporation with its primary place of business in California. (Id. ¶ 2.) Defendant Experian Information Solutions ("Experian") is an Ohio corporation with its primary place of business in California. (Id. ¶ 3.) Both defendants' headquarters have been located in California throughout the period of time relevant to this litigation. (Def.'s 56.1(a) Resp. ¶ 1.)

At some point, the complaint alleges March of 2003, Clark accessed Consumerinfo's website ("website") from her workplace computer in Schamburg, Illinois. (Pl.'s 56.1(b)(3)(A) Resp. ¶ 6.) Clark proceeded to engage in a transaction with defendants while on that website. That transaction forms the basis of the dispute between the parties. This court assumes, for purposes of this motion, that the defendants are equally responsible for the website Clark accessed. All of the pages Clark visited on the website are stored on Consumerinfo's servers, which have always been located in California. (Id. ¶ 13.)

During the transaction, Clark purchased a "Three Bureau Credit Report" for $24.95. (Id. ¶

---

[1] This court disagrees with Clark's argument that because a genuine issue of fact exists as to whether defendants' representations to Clark were proper summary judgment is not appropriate at this time. For purposes of the choice-of-law issue, this court assumes that Clark's allegations regarding defendants' deceptive practices are true. There are no factual disputes that preclude this court from deciding the choice-of-law issue at this time. Furthermore, this court accorded Clark sufficient time for additional discovery to respond to defendants' choice-of-law argument.

2

18.) Clark used her computer in Illinois to submit information to defendants in order to effectuate the transaction, which included information regarding her credit card information. That information was received by defendants in California. (Id. ¶ 19.) According to Clark, she was not only charged for the "Three Bureau Credit Report," which she was allegedly never able to view and print from her computer screen as she expected to do, but she was also charged $79.95 for defendants' CreditCheck monitoring service, which she did not know she purchased.

## ANALYSIS

"[C]hoice-of-law rules come from the state in which the federal court sits," which in this case is Illinois. *In Re: Bridgestone/Firestone Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002). "Under Illinois choice-of-law rules, this court will apply Illinois substantive law unless a conflict of law exists and makes a difference in the outcome of the litigation." *Nicholson v. Marine Corps W. Fed. Credit Union*, 953 F.Supp. 1012, 1015 (N.D. Ill. 1997).

Two other judges in this district have previously held that a conflict exists between the California and Illinois consumer-protection statutes, because the California Code, unlike the Illinois Code, allows a plaintiff to file suit as a "'private attorney general' acting on behalf of the 'general public.'" *Nicholson*, 953 F.Supp. at 1016 (citing Cal. Bus. & Prof. Code § 17204); *Pope v. Vogel*, No. 97 C 1835, 1998 WL 111576, at * 9 (N.D. Ill. Mar. 5, 1998). This court agrees with those rulings, and does not believe that the recent changes in the California Code resulting from passage of Proposition 64 in November of 2004 undermine the validity of those previous rulings. While the California Code now requires a plaintiff to allege that she "suffered injury in fact and has lost money or property as a result" of the alleged violation, Cal. Bus. & Prof. Code § 17204, the court assumes based on the allegations in her complaint that Clark could make such an allegation. It is, however,

3

unnecessary to rule equivocally on whether a conflict of law exists, because even assuming such a conflict, Illinois substantive law applies to this lawsuit. *Perovich v. Humphrey*, No. 97 C 3209, 1997 WL 674975, at *5 (N.D. Ill. Oct. 28, 1997).

"Under Illinois choice-of-law principles, the 'most significant contacts' must be examined." *Jones v. State Farm Mutual Auto. Ins. Co.*, 682 N.E.2d 238, 249 (Ill. App. Ct. 1997) (citation omitted). In assessing the most "significant contacts," both parties rely primarily on section 145 of the Restatement (Second) of Conflict of Laws ("Restatement"), which requires that a court consider the following important contacts with respect to a tort:

> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.

Restatement § 145(2). Both parties also rely on section 148 of the Restatement, which exists for situations of fraud and misrepresentation when "there may be little reason in logic or persuasion to say that one state rather than another is the place of injury." Restatement § 145, cmt. e. Under either test, Illinois courts do not simply tally contacts, but instead favor an "interest analysis," which "is based on the conclusion that '[c]ontacts obtain significance only to the extent that they relate to the policies and purposes sought to be vindicated by the conflicting laws.'" *Jones*, 682 N.E.2d at 249-250 (citing *Mitchell v. United Asbestos Corp.*, 426 N.E.2d 350 (Ill. App. Ct. 1981)).

The parties dispute whether or not the place of injury in this case can be determined. This is significant because "Illinois law presumes that the law of the state where the injury occurred will govern 'unless another state has a more significant relationship to the occurrence or to the parties involved.'" *Miller v. Long-Airodox Co.*, 914 F.2d 976, 978 (7th Cir. 1990) (citing *Ferguson v.*

4

*Kasbohm*, 475 N.E.2d 984, 986) (Ill. App. Ct. 1985)). Defendants argue that Clark's alleged injury occurred in Illinois. Clark does not argue that California is the place of injury, but does argue that the place of injury cannot be determined. If Clark is right, then this court should not focus on section 145 of the Restatement, which places heavy emphasis on the place of injury, but should instead focus on section 148(2). As explained below, this court rules that the place of injury in this case is Illinois, which is also the state with the greatest interest in this case. But even if this court accepted the argument that section 148 should apply because Clark's place of injury cannot be determined, this court still would hold that Illinois is the state with the most significant contacts to this case.

This court does not believe that this is a case where the place of injury cannot be determined. The Seventh Circuit has unequivocally held that in a consumer fraud case, "the injury is decidedly where the *consumer* is located." *In Re: Bridgestone/Firestone Inc.*, 288 F.3d at 1017. The defendants argue that this holding by the Seventh Circiut is controlling here, but they may come to that conclusion too quickly because in *Bridgestone/Firestone* the Seventh Circuit was analyzing Indiana law.[2] This court need not linger on the issue though, because even if not controlling, the conclusion reached by the Seventh Circuit in *Bridgestone/Firestone* – that in a consumer fraud case injury is where the consumer is located – is consistent with the law of Illinois.

Like the party in *Bridgestone/Firestone* asking the District Court for the Southern District of Indiana to apply out-of-state law, Clark cannot point to a single Illinois "case applying any law other than [Illinois's] to warranty or fraud claims arising from consumer products designed (or contract terms written) out of state, unless a choice-of-law clause was involved." *Id.* at 1018. In fact,

---

[2] Clark has not attempted to distinguish the holding of Bridgestone/Firestone, even though this court is bound by the law of the Seventh Circuit.

all of the cases cited by the parties concerning courts sitting in Illinois considering whether to apply Illinois or California consumer-protection statutes have chosen the Illinois consumer-protection statute. *Nicholson*, 953 F.Supp. at 1016-17, *Vogel*, 1998 WL 111576, at * 9-10, *Perovich*, 1997 WL 674975, at *5-6. This includes the only court cited by the parties from the State of Illinois considering the issue, which has rejected the application of the California consumer-protection statutes. *Barbara's Sales Inc. v. Intel Corp.*, No. 02-788, slip op. at 6 (Cir. Ct. Madison County, Ill. July 12, 2004) ("Illinois courts have not held that the laws of another state (the state of a manufacturer's principal place of business) governs the consumer fraud claims of Illinois residents for goods purchased in Illinois . . . .").

Furthermore, as Clark points out, Illinois courts evaluate the significance of a contact "only to the extent that [it] relate[s] to the policies and purposes sought to be vindicated" by the underlying law. *Jones*, 682 N.E.2d at 249-250. This "interest analysis" leads to the conclusion that Clark's injury in this case occurred in Illinois. Determining where the injury occurred requires an examination of the policies and purposes sought to be vindicated by the consumer-protection statutes. The primary purpose of consumer-protection statutes is to protect consumers from fraudulent sales. The focus of the statutes is protecting the consumer. The harm the statutes are designed to protect against occurs when a consumer is defrauded. It follows then from an "interest analysis," which Clark urges this court to employ, that the injury in a consumer fraud case occurs where the consumer is located.[3] In this case, the place of Clark's injury, the first and most important

---

[3] Clark seems to make the argument that this court should resolve the disagreement as to whether or not the place of the injury can be determined under the summary judgment standard which requires this court to view the facts in the light most favorable to the nonmoving party. Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003). Factual issues, of course, are considered under the standard, but Clark misapplies that rule by arguing that any ambiguity in the legal

6

contact to which section 145 points, is Illinois.

The remaining factors under section 145 are likely neutral, but in any event do not override Illinois's interest. The parties' domiciles are split between California and Illinois, and no real relationship exists between them except for the single transaction giving rise to this suit. The place of the conduct giving rise to the injury may favor California, but not so strongly as to override Illinois's interest as the state where the injury occurred. Furthermore, in regard to the conduct giving rise to her injury, Clark also admits, for purposes of venue, that a "substantial part of the events and conduct giving rise to the violations of law complained of herein occurred in or emanated" in the Northern District of Illinois. (Am. Compl ¶ 4.) *See Cox v. Zale Del., Inc.*, No. 97 C 4464, 1998 WL 397841, at *6 (N.D. Ill. July 13, 1998).

The factors set forth in section 148(2)[4] also point toward Illinois as having the most significant relationship to the facts underlying this litigation. The Restatement states:

> (2) When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:
>     (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
>     (b) the place where the plaintiff received the representations,
>     (c) the place where the defendant made the representations,
>     (d) the domicile, residence, nationality, place of incorporation and place of business of the parties,

---

significance of a contact must also be resolved in favor of applying California law. The choice-of-law question, including the significance of certain contacts, is a legal determination for this court to rule on, not a factual question to resolve in favor of Clark in the face of ambiguity.

[4] Neither party relies on Section 148(1) because that section only applies when "the plaintiff's action in reliance took place in the state where the false representations were made and received." Restatement § 148.

7

(e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and

(f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement § 148(2). Defendants are correct that the first factor, the place where the plaintiff acted in reliance upon the defendants' representations, is very significant in making a choice-of-law determination under this section.[5] The comments to section 148(2) make clear that while the place where the plaintiff received the representations, and the place where the defendant made the representations are equally important, neither of those contacts are as important "as is the place where the plaintiff acted in reliance on the defendant's representations."[6] This important contact clearly points to Illinois, where Clark encountered defendants' allegedly deceptive website. The

---

[5] This court rejects Clark's strained argument that "plaintiff's reliance" as described in section 148(2)(a) is somehow irrelevant because of "Defendants' omissions of material fact, rather than overt reliance." (Pl.'s Resp. at 14.) The language of the Restatement clearly focuses the court on the "place . . . where the *plaintiff acted* in reliance," and does not refer to whether the defendant's representations were deceptive because they were overtly false or simply omissions. Restatement § 148(2)(a) (emphasis added). Furthermore, Clark's other attempt to distinguish the importance of the place of reliance by quoting the language of the Restatement that states "[t]he place of loss may be even more difficult to locate when . . . plaintiff's reliance simply takes the form of non-action" is completely misplaced because in this case, Clark, who is the plaintiff, took action – she purchased a product – and did not choose to forego an action in reliance on defendants' representations. (Pl.'s Resp. at 14.)

[6] The comment states in full:

*The place where the plaintiff received the representation.* This is the place where the representations were first communicated to the plaintiff. This place constitutes approximately as important a contact as does the place where the defendant made the representations. On the other hand, this place is not so important a contact as is the place where the plaintiff acted in reliance on the defendant's representations.

Restatement § 148(2), cmt. g.

8

domicile of the plaintiff, which the comments make clear is more important than the domicile of the defendants, also clearly points to Illinois.[7] Thus, Clark received and relied upon the representation all in the state of her residence, which is Illinois.

In regard to the last two contacts highlighted by section 148(2), Clark has established that the credit report she allegedly did not receive was saved on defendant Consumerinfo's computer servers in California, (Def.'s 56.1(b)(3)(B) Resp. ¶¶ 30-31), but even assuming that a saved credit report can be the tangible subject of a transaction, that contact does not tip the balance of factors in favor of applying California law. The last factor also does not strongly point toward California as Clark argues, because even if her action can be properly described as "render[ing] performance under a contract," Illinois is where Clark acted. **Restatement § 148(2)(f)**. Illinois is where Clark resides, where she received and relied upon the allegedly deceptive representations of defendants, and Illinois therefore is the state with the most significant contact to Clark's claim. Under section 145 or 148 of the Restatement, Illinois is the state with the most significant contacts to this case.

Finally, this court comes to Clark's primary argument, which is that the policies of both States' laws favor applying the California consumer-protection statute. In short, Clark argues that from a policy standpoint, there is no harm to Illinois in applying California law. Therefore, according to Clark, this court should just apply California law because it is presumably more beneficial to

---

[7] The comment states:

*Other contacts.* The plaintiff's domicil or residence, if he is a natural person, or the principal place of business, if plaintiff is a corporation, are contacts of substantial significance when the loss is pecuniary in its nature, as is true of the situations covered by this Section. This is so because a financial loss will usually be of greatest concern to the state with which the person suffering the loss has the closest relationship.

Restatement § 148(2), cmt. i.

9

Clark. This argument has been foreclosed by the Seventh Circuit and the Supreme Court. *In Re: Brdigestone/Firestone Inc.*, 288 F.3d at 1018 (citing *BMW of North America Inc. v. Gore*, 517 U.S. 559, 568-73, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996)) ("State consumer-protection laws vary considerably, and courts musts respect these differences rather than apply one state's law to sales in other states with different rules."). That case law also makes it clear that California's stated interest in applying its laws outside of its borders does not override Illinois's more significant contacts to this case. Cal. Bus. & Prof. Code § 17500.

## CONCLUSION

For the foregoing reasons, defendants' Renewed Motion For Summary Judgment is granted. Counts One, Two and Three of Plaintiff's Amended Complaint are dismissed. This case is set for status on May 19, 2005 to set a further schedule for this case.

ENTER:

JAMES F. HOLDERMAN
United States District Judge

DATE: April 26, 2005.