

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EVELYN CLARK and BRADLEY ELDRED, on behalf of themselves and all others similarly situated,<br>Plaintiffs,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC. and CONSUMERINFO.COM, INC.,<br>Defendants. | Case No. 03 C 7882<br>District Judge James Holderman<br>Magistrate Judge Geraldine Soat Brown |

## MEMORANDUM OPINION AND ORDER

Geraldine Soat Brown, Magistrate Judge

This case comes before the court on Plaintiffs' Motion to Compel. [Dkt 185.] For the reasons set out below, that motion is granted in part and denied in part.

### Background

*1.  This lawsuit.*

In this putative class action, Plaintiffs allege that defendants ConsumerInfo.Com. Inc. ("CIC") and Experian Information Solutions, Inc. (collectively, "Defendants") lured consumers on to their jointly operated websites with the promise of a free credit report and then deceived customers into enrolling and paying for Defendants' credit check monitoring service. (Second Am. Compl. ¶ 2.) [Dkt 143.] Defendants deny any wrongdoing. The District Judge has ordered discovery closed

1

in this case on February 15, 2006. [Dkt 140.][1]

2.  *CIC's settlement with the FTC.*

In August 2005, the Federal Trade Commission announced a settlement with CIC and entered into a Stipulated Final Judgment and Order for Permanent Injunction regarding conduct that is substantially similar to the subject of Plaintiffs' complaint. (Pls.' Mem. Supp. Mot. Compel, Ex. A.) [Dkt 220.] The Stipulated Final Judgment states that the FTC's agreement to enter into the Order is premised on "the truthfulness, accuracy, and completeness of the consumer complaint, refund, purchase data, and other information provided by Defendant and dated June 24, 2005." (*Id.* at 22.)

Plaintiffs promptly served a document request asking for all documents CIC produced to the FTC in connection with the investigation that led to the filing of the FTC's complaint. (Pls.' Mem. Supp. Mot. Compel Disc., Ex. B.) [Dkt 200.][2] CIC served a lengthy objection to that request, stating, *inter alia*, that it interpreted the request as seeking two types of documents: previously existing business documents that were produced to the FTC, and documents created in connection

---

[1] The District Judge denied Plaintiffs' motion for class certification. [Dkt 229, 230.] Plaintiffs advised the court they intend to appeal that decision pursuant to Fed. R. Civ. P. 23(f).

[2] Plaintiffs had served a document request in April 2004 for documents evidencing any steps taken or procedures followed by Defendants to ensure compliance with the FTC regulations or protection statutes. (Pls.' Mem. Supp. Mot. Compel Disc. at 4.) Defendants' response to that request did not disclose the FTC investigation. *Id.* Plaintiffs argued that by failing then to disclose the existence of the FTC investigation and assert a privilege based on settlement negotiation, Defendants waived the right to assert any such privilege subsequently. (*Id.* at 7.) Defendants responded that the April 2004 request was not broad enough to encompass documents relating to an investigation or settlement. (CIC's Resp. Opp'n Pls.' Mot. Compel at 3-4.) [Dkt 213.] In an oral ruling on December 13, 2005, the court declined to find waiver and held that the parties should address the merits of Defendants' response to Plaintiffs' August 2005 request, which squarely seeks such documents. [Dkt 228.]

with the settlement negotiations. (Pls.' Mem. Supp. Mot. Compel Disc., Ex. B, Resp. To Request No. 1.) CIC objected to producing any business records, regardless of when created, that were sent to the FTC during the course of what CIC considers settlement negotiations, on the ground that such documents are irrelevant and unlikely to lead to discovery of admissible evidence. (*Id.* at 4.) CIC's objection cited *White v. Kenneth Warren & Sons, Ltd*, 203 F.R.D. 364 (N.D. Ill. 2001) and *Vardon Golf Co. v. BBMG Golf, Ltd*, 156 F.R.D. 641 (N.D. Ill. 1994), two cases that discuss Fed. R. Evid. 408. (*Id.*) CIC further stated that it would produce to Plaintiffs any business documents that had been produced to the FTC prior to the date that CIC considers the settlement negotiations to have commenced. (*Id.*) As discussed below, no such documents have been produced. Plaintiffs then filed the present motion to compel.

*3.     Defendants' position regarding settlement negotiations; Darryl Gibson's declaration.*

CIC's agreement to produce documents given to the FTC prior to the beginning of settlement discussions is essentially meaningless because, according to Defendants, CIC "almost immediately" began settlement negotiations, and therefore, virtually nothing would be produced. (CIC's Resp. Opp'n Pls.' Mot. Compel at 1.) To support their position, Defendants submitted the declaration of Darryl Gibson, vice-president and assistant general counsel of Experian. (*Id.*, Ex. A, Decl. Darryl Gibson ¶ 1.) Mr. Gibson states that the FTC first contacted CIC in July 2002 with regard to its investigation of CIC's websites, and in August 2002, he began discussions with the FTC in an effort to resolve the FTC's assertion that CIC's website was misleading. (Gibson Decl. ¶ 2.) Mr. Gibson further states that "[o]ff and on for the next three years," the FTC and CIC had "discussions regarding this dispute" during which CIC voluntarily produced information and documents in

3

furtherance of CIC's efforts to settle the matter. (Gibson Decl. ¶ 3.)

Defendants were ordered to deliver to the court for *in camera* inspection all documents that CIC produced to the FTC in connection with the FTC's investigation, and all documents containing communications between the FTC and CIC regarding the investigation. [Dkt 218.][3] According to Defendants' counsel, Defendants have not produced to Plaintiffs any of the documents delivered *in camera*, not even the FTC's initial letter to CIC in July 2002 (CIC/INCAMERA Docs. 1-5).

Defendants did not prepare any privilege log or otherwise identify the documents being withheld, on the theory that their objection was the scope of discovery, not assertion of a privilege. (CIC's Resp. Opp'n Pls.' Mot. Compel at 5 n. 2.) Subsequently, the District Judge ordered Defendants to produce a privilege log for those documents, which is currently due to be served on January 13, 2006. [Dkt 234.]

## Discussion

*1. Legal standard.*

Federal Rule of Evidence 408 provides:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of

---

[3] Defendants advised the court that they redacted or removed any information protected by attorney-client privilege or work product protection before delivering the documents for *in camera* inspection.

4

undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Defendants have taken a very broad view of Rule 408 that is not supported by the text of that rule or the cases on which Defendants rely. Defendants contend that any documents that "relate to settlement negotiations" are outside the scope of discovery. (CIC's Resp. Opp'n Pls.' Mot. Compel at 1.) However, Rule 408 does not create any category of documents that is off limits from discovery. Rather, Rule 408 creates a narrow exclusion from admissibility as evidence. Of course, information does not have to be admissible to be discoverable, if it is "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Furthermore, Rule 408's limited exclusion is not applicable when the evidence is offered for a purpose other than to prove liability for or invalidity of the claim or its amount. Thus, Defendants' claim that there can be no discovery of any documents "related to settlement" must be rejected.

Defendants' overly-broad construction of Rule 408 does not find support in the *White* opinion, which stated that "Rule 408 'only applies to the admissibility of evidence at trial and does not necessarily protect such evidence from discovery'. . . ." 203 F.R.D. at 368, quoting *Morse/Diesel, Inc. v. Fidelity and Deposit Co.*, 122 F.R.D. 447, 449 (S.D.N.Y. 1988). The court in *White* also noted a number of decisions in which discovery of settlement documents had been permitted. 203 F.R.D. at 367. Likewise, the *Vardon* case, also cited by Defendants, sets out a standard for the discovery of "information . . . [that] would not be admissible due to an exclusionary rule" such as Rule 408, but does not say that such information is completely outside the scope of potential discoverability. 156 F.R.D. at 651. Even in the cases where evidence about settlement was excluded from trial, it is a fair inference that the information was the subject to discovery. For example, the court in *Davis v. Rowe*, No. 91 C 2254, 1993 WL 34867 at *1-2 (N.D. Ill. Feb. 10,

1993), refused to allow into evidence a statement made by defendant to his insurer. However, the plaintiff presumably learned about that document through discovery.

Thus, Defendants are simply wrong in asserting that Rule 408 makes information relating to settlement negotiations off limits from discovery. However, courts have recognized that the purpose of Rule 408 to encourage settlement of disputes might be chilled by fear that negotiations might be discoverable, and have sought to balance furthering that purpose with the policy of liberal discovery. *See White*, 203 F.R.D. at 368; *Vardon*, 156 F.R.D. at 650, 652. Thus, the court in *Vardon* determined that, to obtain information that would be inadmissible because of Rule 408, the proponent of discovery must demonstrate that it is admissible for another purpose or by showing how discovery of the item might lead to other admissible information. *Id.* at 651.

Significantly, under *Vardon*, such a showing is required only to obtain information that would be inadmissible because of Rule 408. As discussed above, the exclusion in Rule 408 is quite narrow, covering only: (a) evidence of offers or acceptances of valuable consideration for the purpose of proving liability for or invalidity of a claim or its amount; and (b) evidence of conduct or statements made in compromise negotiations.

2.   *Application to Defendants' documents.*

Defendants made a strategic decision simply to object to producing all documents that, in Defendants' opinion, "relate to settlement" regardless of when created or what those documents contain. For the reasons set out above, that overly-broad claim is not legally supported and must be overruled. The only real issue is whether any of the documents delivered for *in camera* inspection should not be produced, out of respect for the goal of avoiding chilling settlement efforts.

Defendants' unsustainable blanket approach does not assist the court in answering that question.

It appears that the documents under discussion, although described collectively by Defendants as "settlement documents," fall into a number of categories:

1. Communications between the FTC and CIC, which Rule 408 suggests should be subdivided between documents that contain discussion of attempts to compromise, and those that do not;

2. Business records that existed prior to the commencement of the FTC's investigation, but were furnished to the FTC following the instigation of the investigation;

3. Documents, including data compilations, prepared by Defendants especially in response to requests by the FTC for information.

Defendants have not made any effort to identify which of the documents delivered *in camera* fall into any of these categories.

One reality that must be borne in mind is the fact that discovery in this case is set to close on February 15, 2006. [Dkt 140.] Although the FTC's investigation began in August 2002, Plaintiffs first learned of it only three years later, in August 2005, and promptly thereafter served the discovery request. *See* Pls.' Mem. Supp. Mot. Compel Disc. at 2-3, Ex. B. Any discoverable information must be made available to Plaintiffs as soon as possible to be of practical use.

   a.   *Documents in category 2.*

There is no basis for protecting from discovery any documents in category 2, that is, business records that existed prior to the commencement of the FTC's investigation but were furnished to the FTC following the instigation of the investigation. Indeed, Defendants admit that if those documents were requested by Plaintiffs in a separate discovery request, CIC would produce them. (CIC's Resp. Opp'n Mot. Compel at 7.) Because Defendants did not prepare any privilege log with respect to the

documents they withheld or otherwise describe the information contained in them, it is impossible for Plaintiffs or the court to say definitively whether those documents were sought in one of Plaintiffs' many prior document requests. However, it is a fair assumption that they were, because Plaintiffs' complaint centers on the same allegedly deceptive conduct that the FTC was investigating. Defendants' only argument against producing the documents in response to the current request is that they "would provide insight into the parties' settlement negotiations." *Id.* at 6. It should be noted, however, that Plaintiffs' request did not seek settlement documents; Plaintiffs requested documents CIC produced to the FTC as a result of its investigation. It is Defendants who assert that virtually all of the documents are "settlement documents."

Defendants' argument suggested a parallel to the work product protection that prohibits an opposing party from asking a witness about the selection of particular documents were shown to him by his counsel in preparation for a deposition. (CIC's Suppl. Br. at 10-11.) [Dkt 221.] However, Defendants have not been able to provide any authority to support that argument. *Id.* On examination, the analogy is not apt. An attorney's mental processes and strategies are the most protected aspect of attorney work product, but the information exchanged in settlement negotiations is not protected. Under Rule 408, evidence is not excluded simply because it is presented in the course of compromise negotiations. Furthermore, creating such a principle of protection would be particularly inappropriate in this case, where what is characterized by Defendants as "settlement negotiations" began with a government investigation. The documents and information that Defendants conveyed to the FTC were not the result of Defendants' sole selection; they were responsive to the FTC's requests. Thus, documents in category 2 must be produced.

b. *Documents in category 3.*

Defendants argue that they should not be required to produce documents in category 3, that is, documents prepared by Defendants especially in response to requests by the FTC for information, unless Plaintiffs make the showing required by *Vardon*. Defendants' argument relies on a premise for which they provide little authority, that is, that such documents are inadmissible pursuant to Rule 408 because they are "[e]vidence of conduct or statements made in compromise negotiations." F.R.E. 408.[4]

In fact, voluntary disclosure to an investigating governmental agency has been held to waive even attorney work product protection. *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235, 236 (2d Cir. 1993) (work product protection waived with respect to a document which the defendant had produced to the SEC in the hope of preventing a formal investigation); *In re Bank One Securities*

---

[4] In a footnote, Defendants argue that courts interpret the admissibility of settlement efforts with a government agency under Rule 408, and have not carved out any special rules. (CIC's Suppl. Br. Opp'n Pls.' Mot. Compel at 6 n. 3.) However, the cases Defendants cite provide thin support for such a broad statement. In *EEOC v. Gear Petroleum, Inc.*, 948 F.2d 1542 (10th Cir. 1991), the issue was whether the district judge abused his discretion in not admitting into evidence two letters that the district judge construed as part of settlement negotiations, in part because of the statutory requirement that the EEOC engage in informal conciliation. 948 F.2d at 1543. Defendants also cite *U.S. v. OCCI Co.*, 758 F.2d 1160 (7th Cir. 1985), which discussed in a footnote the "questionable" admissibility of a government agency's decision on a proposal to settle a foreclosure action. *Id.* at 1165 n. 6. Notably, that discussion did not relate to information provided to the government in the course of an investigation. Defendants also rely on *U.S. v. Lorince*, 773 F. Supp. 1082, 1096 (N.D. Ill. 1991), which, they claim, held financial statements provided for purposes of settlement to be inadmissible. (CIC's Suppl. Br. Opp'n Pls.' Mot. Compel at 8.) However, that is not correct. The document at issue was a "Financial Statement of Debtor" submitted to the Small Business Administration as part of a form "Offer in Compromise." 773 F. Supp. at 1095. The court did not hold that the document was inadmissible; rather the court considered the document but concluded that it did not evidence either an admission of or intent to honor the debt, for purposes of reviving the statute of limitations. *Id.* at 1099. The court also recognized that the government's attempted use of the document that was submitted as part of an express offer of compromise would undermine the policy of Rule 408. *Id.* at 1101.

*Litigation*, 209 F.R.D. 418, 423-24 (N.D. Ill. 2002) (work product protection waived as to submissions made by Bank One to the Office of the Comptroller of the Currency during the Office's investigation of Bank One).

Defendants attempt to distinguish the *Steinhardt* and *Bank One Securities* cases on the ground that the documents at issue in those cases were produced "during a government investigation, not settlement negotiations . . . ." (CIC's Suppl. Br. Opp'n Pls.' Mot. Compel at 2.) Defendants acknowledge that the test applied in *Vardon* is not required to obtain discovery of documents produced in response to a government investigation. (*Id.* at 4.) However, they argue that the *Vardon* standard is required to obtain documents produced to the government in settlement negotiations, although they acknowledge there is no authority to support that argument. *Id.* at 6. Defendants' proposed distinction is illusory. As the court in *Steinhardt* recognized, the reason information is produced voluntarily to an investigating governmental agency is that "there is some benefit to be gained from disclosure . . . [such as] an opportunity to avoid extended formal investigation and enforcement litigation by the SEC, the possibility of leniency for prior misdeeds, and an opportunity to narrow the issues in any resulting litigation." 9 F.3d at 235-36. Those were undoubtedly CIC's motives for providing information to FTC.

Defendants provide no objective basis for distinguishing between business information provided *in cooperation with* a government investigation and business information provided as part of an effort *to settle* a government investigation. Defendants' position is that a line should be drawn based on Darryl Gibson's declaration that in August 2002, he began discussions with the FTC in an effort to resolve the FTC's assertion that CIC's website was misleading. (Gibson Decl. ¶ 2.) Thereafter, Defendants argue, all communications with the FTC and information provided to the

10

FTC (not just offers and counteroffers) were part of settlement negotiations, and therefore outside the scope of discovery unless Plaintiffs make the showing required by *Vardon*. However, the discussion in *Steinhardt* demonstrates that the motivation for cooperation with a government investigation is to reach a more favorable resolution, essentially a settlement. The standard for discovery cannot depend on Defendants' unilateral and subjective decision that on a particular date some line was crossed between cooperation and negotiation.

Significantly, the court in *Steinhardt* rejected the argument that requiring production to third parties of attorney work product conveyed to the SEC would discourage voluntary cooperation, in light of the incentives for cooperation with "such formidable adversaries as the SEC." 9 F.3d at 236 (quotations omitted). *A fortiori*, it is unlikely that requiring the production to third parties of business information communicated to the FTC will deter anyone who receives notice that the FTC is commencing an investigation from cooperating with that investigation.

There are also practical problems with Defendants' distinction. Defendants have not broken down the over 1000 pages delivered for *in camera* inspection between pre-existing business information and business information prepared for the FTC. For example, document 1434 contains statistics from 2000 to 2003 about the percentages of consumers who signed up for CIC's credit monitoring service but subsequently cancelled over time. The information in that document is presumably based on CIC's internal records predating the FTC investigation. Even if this particular document was prepared in response to the FTC's request, it is hard to see why that circumstance should exempt the document from discovery.

By not applying the standard set out in *Vardon* to categories 2 and 3, the court is not suggesting that those Plaintiffs have failed to make the showing required by *Vardon*. On the

11

contrary, the information that the FTC was seeking appears to be very similar to the sort of information Plaintiffs have been seeking throughout discovery in this case, such as the number of complaints and requests for refunds CIC received from consumers. *See* CIC/INCAMERA Doc. 12. Rather, the court finds that, for the reasons set out above, Defendants have not demonstrated that the court should require Plaintiffs to make the showing required by *Vardon* before requiring production of the documents at issue in categories 2 and 3.

  c. *Documents in category 1.*

Category 1 includes documents that actually reflect CIC's and FTC's negotiations, that is, offers, counteroffers, acceptances, drafts of the proposed agreed order. Those documents may contain the type of candid "give and take discussion" that courts have protected from discovery. *See White*, 203 F.R.D. at 368. Defendants, rather than the court, should initially identify which of the documents delivered *in camera* reflect negotiations. Thus, Defendants may exempt from production any documents that contain express specific offers of compromise or expressly respond to an offer of compromise, and drafts of any settlement agreement, but must identify those documents by Bates number.

## Conclusion

For the foregoing reasons, Plaintiffs' motion to compel documents relating to the FTC's investigation is granted in part and denied in part. Defendants shall produce to Plaintiffs's counsel all documents that were delivered to the court for *in camera* inspection on November 18, 2005, except the following: Defendants may withhold from production documents that contain express specific offers of compromise or expressly respond to an offer of compromise, and drafts of any

settlement agreement; any documents so withheld must be identified by Bates number in a letter to Plaintiffs' counsel, with a copy to the court. This decision relates solely to discovery; decisions about admissibility of evidence are the prerogative of the judge presiding at trial.

IT IS SO ORDERED.

GERALDINE SOAT BROWN
United States Magistrate Judge

DATED: January 6, 2006