IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EVELYN CLARK AND BRADLEY ELDRED, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 03 C 7882 |
| | ) |
| EXPERIAN INFORMATION SOLUTIONS, INC. | ) |
| AND CONSUMERINFO.COM, INC., | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

On June 1, 2005, plaintiffs Evelyn Clark, ("Clark"), and Bradley Eldred ("Eldred"), (collectively "plaintiffs"), on behalf of themselves and all others similarly situated, filed a second amended class action complaint against defendants Experian Information Solutions, Inc. ("Experian"), and ConsumerInfo.com (collectively "defendants"), alleging a violation of the Illinois Consumer Fraud Deceptive Practices Act, 815 ILCS 505/1 *et seq*., ("Consumer Fraud Act"), negligent misrepresentation and unjust enrichment. (Dkt. No. 143). Currently pending before the court are three motions filed on May 26, 2006: (1) the defendants' motion for summary judgment against Clark, (Dkt. No. 259), (2) the defendants' motion for summary judgment against Eldred, (Dkt. No. 262), and (3) the plaintiffs' joint motion for summary judgment against the defendants. (Dkt. No. 265). Also pending is the plaintiffs' motion filed July 10, 2006 to strike the defendants' declaration of Carol A. Scott ("Scott"). (Dkt. No. 289). For the reasons set forth below, this court grants the defendants' May 26, 2006 motions for summary judgment against plaintiffs Clark and Eldred. The granting of the defendants' pending motions for summary judgment moots the plaintiffs' motion for summary judgment (Dkt. No.

265) and motion to strike Scott's declaration. (Dkt. No. 289).

BACKGROUND[1]

In essence, plaintiffs Clark and Eldred allege that the defendants have "engaged in an unfair and deceptive act and practice by luring customers onto various web sites they jointly operate with the promises of a 'free' credit report, ... [but] by accepting the 'free' credit report ... consumers [including the plaintiffs] unknowingly enroll in and commit themselves to pay for the defendants' CreditCheck Monitoring Service, ("CMS")." (Dkt. No. 143 at ¶ 2). A primary focus of the plaintiffs' argument is on the alleged deceptive nature of the defendants websites including evidence of action taken by the Federal Trade Commission ("FTC"), Better Business Bureau ("BBB") and credit card companies in response to the defendants' business practices on the websites. Basing their argument on a belief that the defendants' websites are deceptive, the plaintiffs assert that they too have been deceived and therefore are entitled to judgment on their claims. The defendants have responded that the plaintiffs have not provided any evidence to demonstrate that they have been deceived, nor incurred any damages, and therefore they are

---

[1] Only the information essential to the court's decision is set forth in the this opinion. Many other background facts that are not essential to the decision here are set out in this court's, and Magistrate Judge Brown's, previous opinions in this case. *See Clark v. Experian Info. Solutions, Inc.*, No. 03 C 7882, 2005 WL 1027125 (N.D. Ill. Apr. 26, 2005) (holding that Illinois substantive law, not California substantive law, is controlling in this case under choice of law analysis); *Clark v. Experian Info. Solutions., Inc.*, 233 F.R.D. 508 (N.D. Ill. 2005) (denying plaintiffs' motion for class certification), *Rule 23(f) petition for interlocutory appeal denied by*, *In re: Clark*, No. 05-8038 (7th Cir. Feb. 1, 2006); *Clark v. Experian Info. Solutions, Inc.*, No. 03 C 7882, 2006 WL 626820 (N.D. Ill. Jan. 6, 2006) (Brown, J.), *objections to Magistrate Judge Brown's Report and Recommendation denied by*, *Clark v. Experian Info. Solutions, Inc.*, No. 03 C 7882, 2006 WL 931677 (N.D. Ill. Apr. 10, 2006) (compelling defendants' production of certain documents related to the FTC's investigation).

entitled to judgment.[2]

## SUBJECT MATTER JURISDICTION

This case was initially filed as a class action in the Circuit Court of Cook County and then was properly removed to this court on the basis of diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441. Complete diversity has existed at all times because the plaintiffs are Illinois citizens and the defendants are corporations with California and Ohio citizenship. At the time of the original removal, the plaintiffs' complaint originally sought equitable relief which would have required efforts by the defendants costing in excess of $75,000. Additionally, Clark sought individual damages of $104.90 and Eldred sought his individual damages of $274.80. The plaintiffs' second amended complaint eliminated the equitable demand due to an intervening agreement between the FTC and the defendants thus reducing the amount remaining in dispute to the $379.80 in individual claims. (Dkt. No. 143). However, this court continues to have subject matter jurisdiction in this case pursuant to diversity of citizenship because "post-removal events ... do not authorize remand of a suit that was within federal jurisdiction when removed." *Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 816 (7th Cir. 2006) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 293 (1938)); *see, e.g.*, *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 368 (7th Cir. 1993), *amended on other grounds by*, *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536 (7th Cir. 2006) ("Once removal is perfected, the plaintiff cannot suddenly decide that, after all, the amount in controversy is less than the jurisdiction amount so that the case must go shuffling back to state court.").

---

[2] This court need not reach the defendants secondary arguments over the application of Laches and which defendant corporation was responsible for the websites because the court is granting summary judgment on the defendants' primary arguments.

LEGAL STANDARD

Under Rule 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *See Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001) ("The primary purpose of summary judgment is to isolate and dispose of factually unsupported claims."). The evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986); *see, e.g.*, *Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1111 (7th Cir. 2004) (citing *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003); *Schacht v. Wis. Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999) (Summary judgment is the movement in the lawsuit "when a party must show what evidence it has that would convince a trier of fact to accept its version of events.")). In considering a motion for summary judgment, this court is not required to scour the record in search of evidence to defeat the motion; the nonmoving party must identify with reasonable particularity the evidence upon which the party relies. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 898 (7th Cir. 2003). The evidence relied upon in defending a motion for summary judgment must be competent evidence of a type otherwise admissible at trial. *Stinnett v. Iron Work Gym/Exercise*

*Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002).

## ANALYSIS

Turning to the merits of the case, the plaintiffs claimed damages totaling $379.70 allegedly from defendants' violations of the Consumer Fraud Act, Illinois common law negligent misrepresentation and unjust enrichment. "To succeed in a private cause of action under the Consumer Fraud Act, a plaintiff must prove (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damages to the plaintiff (5) proximately caused by the deception." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 856 (Ill. 2005) (citing *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 160 (Ill. 2002)). "To prevail on a negligent misrepresentation claim a plaintiff must ... prove: (1) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party making it; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; (5) damages to the other party resulting from such reliance; and (6) when the party making the statement is under a duty to communicate accurate information." *Equity Builders and Contractors, Inc. v. Russell*, 406 F. Supp. 2d 882, 890 (N.D. Ill. 2005) (citing *Roe v. Jewish Children's Bureau of Chicago*, 790 N.E.2d 882, 893 (Ill. App. Ct. 2003)). "To state a valid claim for unjust enrichment, plaintiff must allege 'that there has been unjust retention of a benefit to the plaintiff's detriment.'" *Taylor, Bean & Whitaker Mortgage Corp. v. Vincent Cebulak*, No. 02 C 7424, 2004 WL 2106605, at *15 (N.D. Ill. Sept. 20, 2004) (quoting *Dames & Moore v. Baxter & Woodman, Inc.*, 21 F. Supp. 2d 817, 827 (N.D. Ill. 1998)).

1. Defendants' Motion for Summary Judgment as to Clark

Clark purchased a $24.95 credit report and registered for a yearly credit monitoring service costing $79.95 resulting in the $104.90 in dispute. The question of whether the defendants websites are deceptive, or whether Clark was deceived, is irrelevant because she cannot demonstrate any actual damages, a required element for her claims. Clark admits that she has been fully refunded the $79.95 she paid for the credit monitoring service with $70.99 coming directly from the defendants and $8.96 coming from the defendants via her credit card company through a charge back leveled on the defendants. (Dkt. No. 283 at ¶¶ 28-32). She even received finance charge adjustments from her credit card company of $.20 and $1.17. (*Id.* at ¶ 33).

As for the $24.95 credit report, the court recognizes that Clark has not been reimbursed for that cost. However, Clark admits that she paid the $24.95 charge on her credit card bill, had reviewed her bill before paying it and did not take any action until her next month's bill included the $79.95 charge. (*Id.* at ¶¶ 19-23). Clark states that she attempted several times to collect reimbursement for the $24.95 charge but she ultimately abandoned it do to the defendants' alleged obstructionist response. However, Clark provides no evidence in the record to support her alleged efforts at a refund, the defendants' alleged obstructionist responses, or the defendants' alleged refusal to refund her money as to her alleged claim for the $24.95. *See Stein v. Ashcroft*, 284 F.3d 721, 726 (7th Cir. 2002) (noting that bald assertions by the non-moving party unsupported by proper evidence or testimony is not sufficient to defeat a motion for summary judgment). Clark argues that requiring her to follow through on her seeking a refund, when one was allegedly available for the defendants, would be an inappropriate burden shifting requirement. The burden has not been shifted in this case, instead Clark, as the party with the

6

burden of proof on her claims, must demonstrate that there is evidence in the record to support her claims sufficient to demonstrate a genuine issue for trial. She had failed to provide any evidence to support that she has suffered actual damages because the only evidence in the record supports the conclusion that either she received a full refund or that a full refund would have been available to her from the defendants if she requested it.

2.  Defendants' Motion for Summary Judgment as to Eldred

Eldred purchased a credit report and one month trial credit monitoring period for $34.95 on December 29, 2001 for $34.95. (Dkt. No. 284 at ¶ 14). Eldred had the option of cancelling the credit monitoring service within the one month period but failure to do so resulted in conversion into a yearly monitoring at $79.95 that automatically renewed until cancelled by Eldred. He paid the $34.95 charge as part of his January 2002 credit card bill, a bill containing only five other charges, without dispute. (*Id*. at ¶¶ 41-43). Eldred, was charged for, and paid the yearly $79.95 charge on his February 2002, January 2003, and January 2004 credit card bills without objection. (*Id.* at ¶¶ 47, 51, 56). He admits at a deposition that he would have reviewed the charges on the 2002 through 2004 bills and noticed the defendants' charges before paying the bills. (*Id.* at ¶¶ 48, 52). The February 2002 bill contained only two other charges, the January 2003 bill had one other charge, and the January 2004 bill had one other charge (*Id.* at ¶¶ 46, 50, 51). Eldred was charged in January 2005 but objected to the charge. He received a complete refund for the January 2005 charge from the defendants via a charge back leveled by the credit card company. (*Id.* at ¶ 59). His credit card company said that it could not charge back the 2002 through 2004 charges because they were over 60 days resulting in the $274.80 at dispute. (*Id.* at 60).

Eldred produces no evidence that he was ever deceived by the defendants and therefore cannot demonstrate the proximate cause element required under the Consumer Fraud Act, that damages as required for a negligent misrepresentation claim, or that his money was taken from him in an unjust way. Eldred's argument is that the defendants websites are deceptive as demonstrated by the concerned raised by the FTC, BBB and credit card companies. Specifically, Eldred argues that the defendants' use of the phrase "Free Credit Report" in promoting their websites was so deceptive that any individual who bought services from the defendants websites, and made payments on these services, was deceived as a matter of law. Eldred is implicitly arguing that he did not understand what he was buying and then blindly paid for the service, despite reviewing his credit card statement for a three-year period, until he finally figured out that he was being charged for something that he was deceived into buying in the first place.

However, the only evidence in the record is that Eldred cannot remember his interactions on the websites, what he read or did not read on the websites, or how the information on the websites affected him when he made his purchase in 2001. (*Id.* at ¶¶ 15, 16, 21, 30, 34). The only evidence in the record going to Eldred's understanding of the websites, beyond paying the credit card bills for three years, is that in his deposition, Eldred was able to work his way through the websites and determine what was free and what was a charge for service. (*Id.* at ¶¶ 26-39). Eldred counters that his understanding of the websites during his deposition would have been vastly improved over his knowledge at the original encounter in 2001 because he had learned about websites over the course of the litigation and the defendants' counsel at the deposition was drawing his attention to certain information on the websites through leading questions. However, Eldred's deposition demonstrates that he could have understood the

8

websites and decided to purchase the service instead of being deceived. This conclusion undermines the plaintiffs' primary argument that the websites are deceptive by definition and that anyone paying for a service from the defendants must have been deceived. There is no evidence in the record that Eldred was ever deceived or ever unknowingly enrolled himself in the defendants' credit monitoring service.

## CONCLUSION

For the reasons set forth above, the defendants' motions for summary judgment against plaintiffs Clark and Eldred filed May 26, 2006 (Dkt. Nos. 259, 262), are granted. The plaintiffs' May 26, 2006 joint motion for summary judgment against the defendants, (Dkt. No. 265) and plaintiffs' July 10, 2006 joint motion to strike the declaration of Carol A. Scott are moot. (Dkt. No. 289). Any other motions are moot and all previously set dates are stricken. The clerk of the court is requested to enter judgment in favor of the defendants against the plaintiffs as to the plaintiffs' claims. Case concluded.

ENTER:

*James F. Holderman*
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: August 2, 2006